# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**STEVEN ARCHULETA,**

    **Plaintiff,**

**vs.**                                                                                       **Civil No. 09-116 RLP**

**MICHAEL ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

### I. Background

Mr. Archuleta was fifty-one years years old at the time his current applications for disability insurance benefits ("DIB" herein) and supplemental security income ("SSI" herein) were filed.[1] Plaintiff's eligibility for DIB expired as of September 30, 2005. (Tr. 55). Thus, to qualify for DIB benefits, he must show he was disabled between June 1, 2005 and September 30, 2005. 20 C.F.R. §404.131. Mr. Archuleta's eligibility for SSI has no such limitation. However, the earliest month for which SSI benefits may be awarded is the month following the month his application for SSI was filed. 20 C.F.R. §416.335.

Mr. Archuleta has a history of knee problems starting approximately 2001-2002, back problems starting approximately 2003, and wrist problems starting approximately 2004-2005. He has a high school education and work experience in such jobs as welder and landscaper.

Mr. Archuleta's relevant medical records consist of several visits at the Questa Health Center, two office visits recorded by treating physician Michael Kaufman M.D., one examination

---

[1] The administrative record indicates that prior applications for DIB and SSI were denied at the first level of administrative review on April 25, 2005, and that no request for review of those denials was filed. (Tr. 274, 60-61).

by consulting physician Marshall Reich, M.D., and x-ray reports. Agency physicians evaluating this case prior to the hearing before the ALJ found Plaintiff did not suffer from a severe impairment or combination of impairments and did not assess his residual functional capacity. The ALJ did not call a vocational expert to evaluate the impact of Mr. Archuleta's impairments on his ability to work.

It is undisputed that Mr. Archuleta has documented arthritis of his back and both wrists, and chondromalacia of both knees. He alleges disabling exertional and nonexertional limitations due to these conditions, as well as from uncontrolled hypertension. He states he has been unable to obtain treatment for his orthopedic problems due to poverty.[2] He takes medication for muscle spasm (Skelaxin) and arthritic pain (Mobic or Celebrex, Motrin or Ibuprophen). In 2005, in connection with prior applications for benefits, Mr. Archuleta stated he could "keep his house going" and "bring in firewood as needed", fix some meals, shop once a month, and walk 1/8 of a mile before needing to rest. (Tr. 125-129). In 2006, in connection with his current applications, he stated that after 2-3 days of working, he would be in pain for a week (Tr. 77). At his administrative hearing in 2007, he testified that he had constant pain in his back, knees and hands, was unable to use his right hand repetitively due to pain and weakness, was unable to sit or stand for more than a few minutes without changing position, and could walk approximately one block. (Tr. 141-149).

Plaintiff alleges a date of onset of disability of June 1, 2005. (Tr. 91, 158). There are few objective medical findings as of May 2006 to support his claims. Marshall Reich, M.D., who evaluated him on one occasion on May 17, 2006, noted his complaints of pain in his wrists, knees

---

[2] Mr. Archuleta testified that he had no income and no insurance, and lived on $80 per month in food stamps. (Tr. 39). Medical providers on three occasions noted his inability to obtain care from an orthopedic specialist because of an inability to pay for the care. (Tr. 239, 163-164, 100). There is no contrary evidence.

and back.  On physical examination, however, the only abnormal findings were a lightly positive Lesegue sign on the right and tenderness of the S1-L5 area.  (Tr. 174-176).  Otherwise he had "good range of motion . . . (could) walk and jump and skip and hop without difficulty . . .(and) get on and off the examining table without any trouble" his reflexes were normal and he had no loss of sensation in his legs.  Id.  Dr. Reich diagnosed low back pain and mild arthritis of both wrists and knees.  (Tr. 176).

In April 2007, Beatrice Balsamo, a physicians assistant in the office of Michael Kaufman, M.D., ordered x-rays of Mr. Archuleta's spine, wrists and knees to evaluate multiple sites of skeletal pain.[3]  (Tr, 165).  These x-rays disclosed abnormalities at each area examined:

| | |
|---|---|
| Lumbar spine: | Marked disc space narrowing at L5-S1 with marked facet arthropathy.  Mild grade I anterolisthesis of L5 on L1 measuring approximately 5 mm, stable since prior exam of 8/18/03.  Moderate disc space narrowing at L2-3 and mild disc space narrowing at remaining levels.  Prominent sclerosis of the L5 pedicle, likely degenerative and mildly progressed exam on 8/18/03.   (Tr. 165) A defect in the pars at L5 on the left, unchanged from exam of 8/18/03. Sclerosis within the right pedicle and pars with marked right facet arthropathy at L5-S1.  (Tr. 168). |
| Left knee: | Mild patellofemoral degenerative changes, subchondral cyst formation which has progressed since exam of 8/18/03, small joint effusion, suggestive of chondromalacia patella. (Tr. 165) |
| Right knee: | Small subchondral cyst increased since exam of 8/18/03, no signficant joint effusion, mild patellofemoral degenerative changes suggestive of chondromalacia patella.  (Tr. 166). |
| Right wrist: | Narrowing of the radiocarpal space.  Mild widening of the scapholunate space, multiple cysts in the lunate and triquetral bones, degenerative changes at the distal radial ulnar joint, prominant subchondral cysts in the distal ulna, sclerosis in the lunate bone, moderate joint space narrowing of the 3rd metacarpal phalangeal joint, |

---

[3]It is of concern to the court that none of Ms. Balsamo's treatment notes are contained in the administrative record.

|              |                                                                                                                                                                                                                     |
|--------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|              | suggestive of (1) disruption of the scapholunate ligament, (2) degenerative changes and (3) sclerosis and cystic change or osteonecrosis of the lunate bone. (Tr. 166).                                              |
| Left wrist:  | Narrowing of the radiocarpal space, mild positive ulnar variance, degenerative changes of the lunate and triquetrum bones, suggestive of ulnolunate impaction. (Tr. 166-167).                                        |

Dr. Kaufman examined Plaintiff on June 8, 2007. He observed that Plaintiff's gait was normal, but that he walked stiffly, that he had diffuse muscle spasm in his neck and mid to low back, and difficulty using his right wrist, specifically stating that he had difficulty shaking hands or gripping. Dr. Kaufman did not mention the April 2007 x-rays and did not state a diagnosis. He "strongly recommended" orthopedic evaluation and physical therapy. (Tr. 163-164). On July 7, 2007, Ms. Balsamo wrote a letter stating that Plaintiff was "physically disabled with severe arthritis," required additional care she could not provide, and needed to be seen by an arthritis specialist but could not afford to do so. (Tr. 100). The letter did not specify any specific physical limitation. Dr. Kaufman saw Mr. Archuleta on one occasion after the ALJ's decision was rendered, and noted definite weakness of right side grip compared to left, and great deal of muscle spasm in the lumbo sacral area with some bilateral tenderness. (Tr. 11). He did not qualify the extent of right grip weakness.

Mr. Archuleta eventually obtained physical therapy (Tr. 13, 319, 321), but did not submit the records related to this care to the Appeals Council.

The ALJ found that

(Mr. Archuleta's) medically determinable impairments (of degenerative changes affecting his lumbar spine, knees and wrists) could reasonably be expected to produce some of the alleged symptoms, but that his statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely credible."

(Tr. 23, 25).

The ALJ also found that Mr. Archuleta could not return to his past relevant work but retained the RFC for the full range of light work. The ALJ applied the medical vocational guidelines conclusively to find that based on his RFC category, age, work experience, and education, Mr. Archuleta was not disabled.[4]  (Tr. 27).

## II.  Standard of Review.

Review of the Commissioner's decision is limited to determining whether substantial evidence in the record as a whole supports the factual findings, and whether the correct legal standards were applied. **Hamilton v. Secretary of Health & Human Services**, 961 F.2d 1495, 1497-98 (10th Cir.1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Hamilton**, 961 F.2d at 1498. Evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. **Musgrave v. Sullivan,** 966 F.2d 1371, 1374 (10th Cir.1992). The court may neither re-weigh the evidence nor substitute its discretion for that of the Commissioner. **Hinkle v. Apfel**, 132 F.3d 1349, 1351 (10th Cir.1997); **Kelley v. Chater**, 62 F.3d 335, 337 (10th Cir.1995). Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed. **Ellison v. Sullivan**, 929 F.2d 534, 536 (10th Cir.1990).

## III.  Five-step Sequential Evaluation Process.

The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity for at least twelve months due to a medically determinable impairment. See 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is under a disability, the Commissioner applies a five-step sequential evaluation. The steps are: (1) whether the claimant is currently

---

[4]20 C.F.R. Pt. 404, Subpt. P. App. 2, Rule 202.14.

working; (2) whether the claimant suffers from a severe impairment[5] or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents the claimant from continuing his past relevant work; and (5) whether the impairment prevents the claimant from doing any kind of work. See 20 C.F.R. §§ 404.1520; 416.920.  If the ALJ finds a claimant's condition does not meet or equal a listed impairment at step three, he must determine the credence to give the claimant's complaints of limitation before proceeding to step four of the sequential evaluation process. 20 C.F.R. §§ 404.1520(e), 416.920(e). The burden is on the claimant through step four. If step four is satisfied, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. **See Williams v. Bowen**, 844 F.2d 748, 751 (10th Cir.1988).

### IV.  Discussion

The ALJ's decision at step five of the sequential evaluation process must be supported by substantial evidence.  **Gossett v. Bowen**, 862 F.2d 802, 804 (10th Cir. 1988). "Substantial evidence" requires "more than a scintilla, but less than a preponderance," and is satisfied by "such evidence that a reasonable mind might accept to support the conclusion." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987).  The determination of whether substantial evidence supports the Secretary's decision is not simply a "quantitative exercise," for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. **Fulton v. Heckler**, 760 F.2d 1052, 1055 (10th Cir.); **Knipe v. Heckler**, 755 F.2d 141, 145 (10th Cir.).

An ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC."  Soc. Sec. R. 96-8p, 1996 WL 374184, at *5.  Because no medical source

---

[5]A "severe impairment" is one which "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520 (c), 416.920(c).

ever considered the x-ray findings in assessing Mr. Archuleta's RFC, the ALJ, finding that he had the RFC for the full range of light work is not based on substantial evidence, but is in reality a mere conclusion rather than a finding based on substantial evidence.

Crucial in this case is the manner in which the ALJ assessed the objective evidence of deterioration demonstrated in the April 2007 x-rays  The ALJ noted that the April 2007  x-rays indicated "somewhat more significant findings" but that nonetheless Mr. Archuleta's symptoms were inconsistent with the relative severity of those findings.  (Tr. 25).  The ALJ pointed to no medical evidence supporting his opinion as to the "relative severity" of the April 2007 findings, and indeed could not because there is no medical opinion on that point.

The April 2007 x-rays also presented objective evidence consistent with Mr. Archuleta's testimony that he had reduced strength in his right hand.  The Dr. Kaufman noted in July 2007 that Mr. Archuleta had difficulty shaking hands or gripping.  (Tr.  164).  The ALJ interpreted Dr. Kaufman's note as recording a subjective symptom, rather than an objective sign. (Tr. 25).  The Appeals Council was presented with a subsequent report from Dr. Kaufman, clearly indicating that Mr. Archuleta had definite weakness of the right side grip compared to the left. (Tr. 11).  Reduced grip strength may constitute a non-exertional impairment.  Social Security Ruling  85-15, "Capability To Do Other Work-the Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments" ("Nonexertional limitations can affect the abilities to reach; to seize, hold, grasp, or turn an object (handle) . . .).  "If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician to determine if additional needed information is readily available." Id. (citing 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict

or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.")). Dr. Kaufman should have been recontacted to clarify any ambiguity as to when Mr. Archuleta experienced objected decrease in hand strength.  **Robinson v. Barnhart**, 366 F.3d 1078, 1084 (10th Cir. 2004).

I find that the ALJ's findings at step five of the sequential evaluation process are not supported by substantial evidence or the application of correct legal principles.

On remand, the Commissioner shall obtain medical assessment of Mr. Archuleta's residual functional capacity in light of the April 2007 x-ray findings, including specifically his grip strength. The Commissioner shall also recontact Dr. Kaufman to determine if he can provide additional information with regard to Mr. Archuleta's grip strength, and shall obtain any additional records for the relevant period of time from Dr. Kaufman's office, for example, Ms. Balsamo's treatment notes.   Further, the Commissioner shall obtain the services of a vocational expert at step five.

In view of the expiration of Mr. Archuleta's entitlement to DIB as of September 30, 2005, I also direct the Commissioner to address the claims for DIB and SSI separately.

In remanding this case, I do not intend to dictate any result.  The court requires only that the correct legal standards are utilized and that the decision reached be supported by substantial evidence.

                                                            _____
                                                            **RICHARD L. PUGLISI**
                                                            **Chief United States Magistrate Judge**
                                                            **(sitting by designation)**